### John T. Slack et al. *v.* Elenor B. Slack et al.

Where S., the decedent, left in his lifetime, a certain amount of money in the hands of T., to purchase a slave for, and in the name of his (S.'s) infant son J., then living with T., and which was carried out as directed : *Held*, that this was intended as an absolute gift by S. to his son, and should be so regarded in law.

On appeal from the probate court of Tallahatchie county ; Hon. John A. Bullock, judge of the probate court of Tallahatchie county.

It is averred in the petition of Elenor B. Slack and others,

filed in the probate court of Tallahatchie county, that the decedent in his lifetime advanced to John T. Slack, one of the distributees, $564.16, and pray that the same be brought into hotchpot against him on distribution. The answer of John T. Slack denies that the same was an advancement, and claims that the same was a gift of the decedent.

Tatum proves the circumstances giving rise to the gift of the slave to John T. Slack, and the declarations of the decedent that it was his intention that John should have it as his own, as so much more than any of his other children, and as independent of any share that said John was to receive from the estate as his legal share thereof, and stating that his other children had no right to complain, as he had raised them, and John had not cost him a cent, being reared from infancy by Tatum and his wife, the aunt of John. He is corroborated very satisfactorily by Mangum and Rhea, all showing Slack's intentions both before and after the gift, and the reason which led to his making it.

On the other hand, Harper was introduced to contradict Tatum, by showing that he (Tatum) had stated that Joseph Slack, deceased, had said, he meant to make no difference among his children. This was explained by Tatum, by showing that he did not finish his conversation with Harper, and spoke at the time under great excitement; and the deceased had said his son John cost him nothing, and, therefore, did not regard the gift of the slave to him as making any difference among his children.

The following instrument of writing was introduced in evidence : —

" Received of Joseph Slack five hundred and sixty-four dollars and sixteen cents, which I hereby promise and bind myself to use in the purchase of a suitable negro girl for the little son of said Slack, whom I now have with me, John T. Slack; and in the event I shall fail to appropriate the said sum of money as above mentioned, then I am to return the same to the said Joseph Slack with interest. Given under my hand and seal this the 26th day of December, 1851.

"JOHN TATUM." (Seal.)

This was in substance the testimony. The court below decreed that the above amount of money should be returned into hotchpot.

*D. C. Glenn* for appellants.

The proof furnishes satisfactory evidence of the express intention of the parent, that this provision for his child was a gratuity and a gift, and not an advancement or a settlement on him.

In no case has a purchase by the father been held an advancement to the son, where it expressly appears to have been the intention of the parent that it should not be considered as such. *Jackson* v. *Matsdorf*, 11 Johns. 91; 1 Sim. & Stu. 1; 1 Cond. Eng. Ch. 1.

Chancellor Kent says, "the maintenance and education of a child, or the gift of money, without a view to a position or settlement in life, is not deemed an advancement. An advancement of money or property to a child is *primâ facie* an advancement, though it may be shown that it was intended as a gift and not as an advancement." 4 Kent, 441; 8 Ala. 414.

*D. Shelton* for appellees.

Tatum's statements on the subject are totally inconsistent with this writing. Parol proof cannot be admitted to deny, change, or alter the written agreement, except for fraud or mistake. Neither of these is averred, pretended, or proved in the present case. 11 Johns. 201; 3 Ib. 68; 1 Ib. 139; 12 Ib. 488.

Tatum's evidence is inadmissible, because Tatum is not a competent witness. He, as guardian of John T. Slack, is sued, he answers for his ward, and is a party defendant on the record, and for these reasons is incompetent.

A guardian, because he supports the expense of an action by his ward, is not competent.

A *prochein ami* is incompetent. 1 Str. 506; 2 Bibb, 341; 20 Johns. 152; 6 Cow. 316; 2 Str. 1026; 1 Ib. 548; 1 Cox, C. C. 286; *Keith* v. *Jolly*, ante.

As guardian of John T. Slack, Tatum will be entitled to the possession, control, and management of his estate. Guardian-

ship is a trust coupled with an interest, and not merely a naked power, and therefore a guardian cannot by his own evidence increase the trust property which will come into his hands. 3 Johns. 53.

Tatum will be entitled to commission from one to ten per cent. on the amount of his ward's property managed by him. Hutch. Code, 506. The tendency of his testimony in this suit, therefore, is to increase the amount of his commissions, and therefore he is interested and incompetent.

Upon the evidence, the question of fact is a doubtful one; for although this court may think the preponderance of evidence against us, yet, unless the question is plainly against us, this court would not disturb the verdict of a jury finding the issue in our favor; and if it would not disturb the verdict of a jury, it will not disturb the decree of the court. 12 S. & M. 615; 13 Ib. 599; 11 Ib. 455.

Mr. Justice FISHER delivered the opinion of the court.

This was a proceeding in the probate court of Tallahatchie county, by the widow and heirs at law of Joseph Slack, deceased, to obtain distribution of the intestate's estate.

The error complained of arises out of that part of the decree directing the sum of $564.16, placed in the hands of Tatum by the intestate, for the purpose of purchasing a slave in the name of and for his infant son, the appellant.

The facts relating to this part of the decree are briefly these: Tatum was indebted to the intestate in a certain sum of money, and it was agreed between the parties that the former should make a purchase of a negro girl in the name of the appellant. The purchase was accordingly made. The whole evidence in the record shows that this was an absolute gift by the father to his infant son, to be by him enjoyed over and above an equal distributive share with the codistributees of the intestate's estate.

The intention of the father to treat the money or slave as an absolute gift, is fully established by evidence free from all objection, admitting the incompetency of Tatum as a witness. This intention, when correctly ascertained, must control the gift, and make it either absolute, or a mere advancement, according to the technical meaning of the term.

Entertaining no doubt that the gift was intended to be un-conditional, we think the court below erred in requiring the money to be brought into hotchpot.

Decree reversed in this respect; and decree here, that said money is not part of the intestate's estate liable to distribution.